UNITED STATES BANKRUPTCY COURT
DISTRICT OF ALASKA

| | | |
|---|---|---|
| In re: | ) | Case No. 22-00096-GS |
| | ) | Chapter 13 |
| JAMES STORM FALTZ, | ) | |
| | ) | Confirmation Hearing Date |
| Debtor(s). | ) | DATE:  November 2, 2022 |
| | ) | TIME:   10:00 a.m. |

**MEMORANDUM ON CONFIRMATION OF DEBTOR'S CHAPTER 13 PLAN**

On November 2, 2022, the court held the continued hearing on confirmation of the debtor's chapter 13 plan (ECF No. 19) (Plan).  The parties dispute whether future bonus payments qualify as projected disposable income that must be included within the debtor's plan and paid within the applicable commitment period.  On the facts presented, the court holds that the bonuses are projected disposable income that must be paid within the applicable commitment period.

**Background**

On August 9, 2022, James Faltz voluntarily filed his chapter 13 bankruptcy petition.  He then timely filed his schedules, statements, and the Plan.  In Schedule I, he lists his job as a "landscape worker" for Faltz Landscaping, where he has been working for nine years "with breaks."  His monthly income was scheduled at $6,893.47, including $200 per month contributed from his annual Alaska Permanent Fund dividend and $1,625 described as "65 percent of the net income of the Debtor's significant other."  ECF No. 14-7 at p. 2.  The debtor also included a note under item 13 stating that he "has taken on additional responsibilities at work and expects a raise in the next 12 months that is likely to be in excess of 10 percent."  *Id.*

The debtor's expenses on Schedule J totaled $5,625 per month.  *See* ECF No. 14-8.  His Schedule J reflects that his two minor children reside with him part time.  *Id.* at p. 1. Based on his

1

stated expenses, the debtor has a total monthly net income of $1,268.47, when pro-rating the anticipated annual Alaska Permanent Fund Dividend to his monthly income. *Id.* at p. 3.

Additionally, in response to item 30 of his Schedule B, the debtor listed "accrued, unpaid wages and accrued bonuses" of $5,000. ECF No. 14-1 at p. 9. That $5,000 was listed as exempt under 11 U.S.C. § 522(d)(5) in the debtor's Schedule C. ECF No. 14-2 at p. 2.

In his Statement of Financial Affairs the debtor listed gross income of $38,428 in 2021 and $13,846 in 2020 from "[w]ages, commissions, bonuses and tips." ECF No. 15. Separately, he listed $24,920 in unemployment compensation he received in 2020. *Id.*

The debtor also filed his Chapter 13 Statement of Your Current Monthly Income and Calculation of Commitment Period (Form 122C) on August 23, 2022. *See* ECF No. 16. Based on the debtor's gross income of $6,510, plus $600 listed as "net monthly income from rental or other real property,"[1] the debtor's reported gross income was $7,110 per month. *Id.* at p. 2. Notwithstanding his Schedule J that lists two children and his statement in response to item 13 of Form 122C that he is married, the debtor states that his household size consists of two people. No party in interest has challenged the applicable household size. The applicable Alaska median income for a household of two is $90,698. The debtor's annual income totals $85,320 and falls below the median income. As a consequence, his plan commitment period is limited to three years instead of five. *Id.* at p. 3.

The debtor, however, proposes a five-year plan to cure significant mortgage arrears that he cannot fund within a three-year plan. The Plan requires monthly payments of $1,050 for 60

---

[1] It is unclear to the court why the debtor listed $1,625 in additional income in his Schedule I, but only $600 in his commitment period calculation. As this issue has not been raised by the parties in this dispute, and the debtor has committed to a 60-month plan regardless of the required commitment period under the statute, the court will not address it here.

2

months, but it also provides that the plan will terminate "at the point when the Debtor's mortgage arrearage has been cured, priority claims have been paid and unsecured creditors have received $2,000.00 in the aggregate." ECF No. 19 at p. 2. Because the Plan estimates the prepetition mortgage arrears to be $73,000, it also provides for an increase in monthly plan payments beginning in the third year of the Plan. The debtor has committed to paying an additional $450 per month in year three of the Plan. This would add an additional $5,400 to the Plan within the applicable three-year commitment period.

The debtor further proposes to contribute an additional $700 per month in year four and $1,000 per month in year five. *Id.* at p. 3. The debtor also commits his annual Permanent Fund Dividends over the course of the five-year plan. These additional payments bring the debtor's total estimated Plan payments to $96,000. *Id.* at p. 8. The debtor projects that unsecured creditors would receive $3,100 over the term of the five-year Plan if completed on these terms (though it is unclear how that is reconciled with the termination of the Plan upon payment of $2,000 to the unsecured creditors).

On October 4, 2022, the chapter 13 trustee filed her negative recommendation regarding confirmation of the Plan. *See* ECF No. 22. Among other things, the trustee argued that the Plan did not comply with 11 U.S.C. § 1325(b)(1)(B) requiring commitment of all the debtor's disposable income for a minimum of 36 months. *Id.* at p. 1. The trustee reported that at the § 341(a) meeting of creditors, the debtor stated "that he expects to receive a commission check for approximately $8,000-$10,000 by the end of the year." *Id.* The trustee contends that the bonuses are part of the debtor's projected disposable income and must be paid into the Plan for the first three years as they are received.

3

At the confirmation hearing held on October 5, 2022, counsel for the debtor argued that the debtor's stepped-up plan payments in years three through five already incorporate the debtor's anticipated bonus income. The debtor further argues that he has satisfied the requirements of § 1325(b)(1)(B) by committing to pay more than what is required, including the projected bonuses, but he simply seeks to spread the payments over the five-year term to make the Plan more feasible. The court requested additional briefing and continued the confirmation hearing. *See* ECF No. 25.

After reviewing the supplemental briefing filed by the parties the court heard additional argument at the continued confirmation hearing held on November 2, 2022. At that hearing the debtor stated that he "basically didn't work for" Faltz Landscaping in 2020 and 2021 and thus did not receive any bonus income during those years.[2] ECF No. 31, recording at 1:37-2:01. But he also explained that he was being "put back on sales," and in 2023 and 2024 under his contract he would receive 10% of anything he sold. *Id.* at 2:32-2:53. Both parties informed the court they had no further evidence to present and the court took this matter under advisement.

## Analysis

### A.    Projected disposable income necessary for confirmation of a chapter 13 plan.

The trustee objects to confirmation of the debtor's Plan for failing to commit all disposable income during the applicable commitment period. Section 1322(a)(1) requires that a chapter 13 plan "provide for the submission of all or such portion of future earnings or other future income of the debtor to the supervision and control of the trustee as is necessary for the execution of the plan." 11 U.S.C. § 1322(a)(1). A court "shall confirm a plan" if "(1) the plan complies with the provisions of this chapter and with the other applicable provisions of this title; ... [and] (3) the plan

---

[2] Although the debtor was not sworn in to provide testimony at either the October 5 or November 2 hearings, the chapter 13 trustee stated on the record that she did not object to the court accepting the debtor's proffered statements as evidence. ECF No. 31, recording at 9:04-9:21.

4

has been proposed in good faith and not by any means forbidden by law...." 11 U.S.C. § 1325(a). However, "[i]f the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan – (A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or (B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan." 11 U.S.C. § 1325(b)(1). "Stated in plain English, if a contested Chapter 13 plan does not provide for a 100% distribution on unsecured creditors' claims, the plan must provide that all of the debtor's projected disposable income to be received in the applicable commitment period...will be applied to make payments to unsecured creditors under the plan." *In re Trobiano*, 532 B.R. 355, 358 (Bankr. D. Colo. 2015) [internal quotation omitted].

When a trustee objects to confirmation under § 1325(b)(1)(B), "the applicable burden of proof is a shifting one." *In re Aquino*, 630 B.R. 499, 547 (Bankr. D. Nev. 2021). "'The objector has the initial burden of proof to show that the debtor is not applying all disposable income to plan payments. The burden then shifts to the debtor, as the party with most access to proof on the point, to show ... that the objection lacks merit.'" *Id.* (quoting *In re Rodriguez*, 606 B.R. 410, 415 (Bankr. E.D. Cal. 2019) [internal quotations omitted])). The shifting burden must be satisfied by a preponderance of the evidence. *Id.*

Here, the debtor has *not* sought to pay all unsecured debt, and the trustee has objected to his Plan triggering the requirement that he commit all projected disposable income to be received in the applicable commitment period. The amount of a debtor's "'projected disposable income' is

5

to be calculated according to the statutory definition of 'disposable income' found in 11 U.S.C. § 1325(b)(2)." *In re Garcia*, 282 F. App'x 549, 551 (9th Cir. 2008). Section 1325(b)(2) provides:

> For purposes of this subsection, the term "disposable income" means current monthly income received by the debtor (other than child support payments, foster care payments, or disability payments for a dependent child made in accordance with applicable nonbankruptcy law to the extent reasonably necessary to be expended for such child) less amounts reasonably necessary to be expended--
>
> > (A)(i) for the maintenance or support of the debtor or a dependent of the debtor, or for a domestic support obligation, that first becomes payable after the date the petition is filed; and
> >
> > (ii) for charitable contributions (that meet the definition of "charitable contribution" under section 548(d)(3)) to a qualified religious or charitable entity or organization (as defined in section 548(d)(4)) in an amount not to exceed 15 percent of gross income of the debtor for the year in which the contributions are made; and
> >
> > (B) if the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business.

In turn, current monthly income is statutorily defined as follows:

> (A) means the average monthly income from all sources that the debtor receives (or in a joint case the debtor and the debtor's spouse receive) without regard to whether such income is taxable income, derived during the 6-month period ending on--
>
> > (i) the last day of the calendar month immediately preceding the date of the commencement of the case if the debtor files the schedule of current income required by section 521(a)(1)(B)(ii); or
> >
> > (ii) the date on which current income is determined by the court for purposes of this title if the debtor does not file the schedule of current income required by section 521(a)(1)(B)(ii); and

6

      (B) (i)  includes any amount paid by any entity other than the debtor (or in a joint case the debtor and the debtor's spouse), on a regular basis for the household expenses of the debtor or the debtor's dependents (and in a joint case the debtor's spouse if not otherwise a dependent); and

      (ii) excludes—

          (I)    benefits received under the Social Security Act (42 U.S.C. 301 et seq.);

          (II)   payments to victims of war crimes or crimes against humanity on account of their status as victims of such crimes;

          (III)  payments to victims of international terrorism or domestic terrorism, as those terms are defined in section 2331 of title 18, on account of their status as victims of such terrorism; and

          (IV)  any monthly compensation, pension, pay, annuity, or allowance paid under title 10, 37, or 38 in connection with a disability, combat-related injury or disability, or death of a member of the uniformed services, except that any retired pay excluded under this subclause shall include retired pay paid under chapter 61 of title 10 only to the extent that such retired pay exceeds the amount of retired pay to which the debtor would otherwise be entitled if retired under any provision of title 10 other than chapter 61 of that title.

11 U.S.C. § 101(10A).

      The Supreme Court clarified how a debtor calculates his or her *projected* disposable income in *Hamilton v. Lanning*, 560 U.S. 505, 511 (2010). Consistent with the statutory definition of "disposable income," debtors must start with their income recognized over the six months prior to filing, then doubled to get an annual income. The Court rejected a strict application of disposable

7

income to calculate *projected* disposable income over the term of a plan. Rather, it recognized that projected disposable income must be forward looking to account for events that would either deprive the creditors of payments that the debtor could easily make if the income is understated or deny the debtor the protection of chapter 13 if the income was overstated. *Id.* at 520. Thus, the Supreme Court held that a "court may account for changes in the debtor's income or expenses that are known or virtually certain at the time of confirmation." *Id.* at 524; *see also In re Orozco*, 613 B.R. 23, 29 (Bankr. D. Or. 2020) ("Because projected disposable income is forward-looking, that number can vary from disposable income if there are differences in income or expenses that are known or virtually certain to occur in the future during the period of the plan.").

If a debtor's projected disposable income is below the median income for households of the same size in the debtor's state,

> Section 1325(b)(1)(B) prohibits confirmation of a plan by a below median debtor, over the objection of the trustee or a creditor, unless the Debtors commit all of their disposable income for three years. Section 1322(d)(2) prohibits a plan term longer than three years for a below median debtor, unless the Court, for cause, approves a longer term, with a maximum of five years. Therefore, the Bankruptcy Code sets the maximum and minimum plan term for a below median debtor not paying all unsecured claims in full at three years, absent cause for a longer term. Cause to approve a longer term would include the inability of a debtor to comply with the confirmation requirements of the Bankruptcy Code despite compliance with the disposable income test by paying their disposable income under the plan for three years.

*In re Rodger*, 423 B.R. 591, 597 (Bankr. D.N.H. 2010); *see also* 11 U.S.C. § 1325(b)(4)(A)(i) ("For purposes of this subsection, the 'applicable commitment period…shall be…3 years…."); 11 U.S.C. § 1322(d)(2) (a below-median debtor's "plan may not provide for payments over a period that is longer than 3 years, unless the court, for cause, approves a longer period, but the court may not approve a period that is longer than 5 years."). Most often, "cause for such extension is the

debtor's need for additional time to amortize the mortgage arrearage, the automobile payments, and/or the priority tax claims." *In re Pasley*, 507 B.R. 312, 317–18 (Bankr. E.D. Cal. 2014) (citing 8 Collier on Bankruptcy ¶ 1322.18[1][b], at 1322–61 (16th rev. ed. 2013)). This appears to be the case in this instance and the trustee does not object to the extended term of the Plan.

### B.     The debtor's future bonuses are projected disposable income.

As noted by the debtor, the parties do not dispute his "disposable income" based on his income for the six months prior to the filing of the petition. Rather, the question is whether any future bonuses are part of his projected disposable income as defined in *Hamilton*. The United States Bankruptcy Court for the District of Colorado addressed this issue in *In re Styerwalt*, 610 B.R. 356 (Bankr. D. Colo. 2019). In that case, the debtor received varied bonuses from his employer in 2015, 2017 and 2018, but not in 2016 or 2019. *Id.* at 371. The debtor did not include bonus income in his calculation of projected monthly disposable income for plan purposes. *Id.* The chapter 13 trustee sought an order requiring the debtor to include his bonuses as part of his projected monthly income, or, alternatively, to amend his plan to require that any future net bonus income be paid into the plan. *Id.* at 373-74. The *Styerwalt* court concluded that because both the amount of the bonus and its existence at all were uncertain from year to year, that income was not "known and virtually certain" such that it should be taken into account in the debtor's calculation of his disposable income. *Id.* (quoting *Hamilton*, 560 U.S. at 519). The *Styerwalt* court observed that although it lacked authority to require the debtor to commit his bonus income to his chapter 13 plan, the trustee could seek to modify the plan if the debtor received a large bonus. *Id.*

The United States Bankruptcy Court for the Middle District of Florida reached a different result in *In re Rivera*, 2020 WL 7333588 (Bankr. M.D. Fla. Nov. 23, 2020). In that case, the debtor received annual bonuses during the month of February from 2016 to 2020, in amounts ranging

9

from $2,600 to $7,500. *Id.* at *1. As in *Styerwalt*, the chapter 13 trustee in *Rivera* argued that the debtor must commit his future annual bonuses to fund his chapter 13 plan. *Id.* The debtor argued that the bonuses were not sufficiently certain to be considered "projected disposable income" under § 1325(b)(1)(B). *Id.* The court disagreed with the debtor. Noting that "it all comes down to the burden of proof," the court determined that "the initial burden of proving the unusual circumstances [under *Hamilton*] logically falls on the party asserting that unusual circumstances require the court to deviate from the calculation on the official form." *Id.* at *2. The court concluded that the chapter 13 trustee satisfied her initial burden of proof because the debtor's history suggested "that Debtor will continue to receive a similar annual bonus throughout the chapter 13 plan." *Id.* The debtor having "failed to show that it was 'known or virtually certain' that the pattern of Debtor receiving an annual bonus would *not* continue throughout the chapter 13 plan," the *Rivera* court denied confirmation and set a deadline for the debtor to file an amended plan which accounted for his annual bonus income. *Id.* at *3 [emphasis added]. *See also In re Klinger,* 2021 WL 955928, at *7 (Bankr. N.D. Ohio Mar. 12, 2021) ("Where there is a history of consistent year-end bonuses, as there is here, courts have considered those bonuses in assessing a debtor's disposable income.").

      Both the *Styerwalt* and *Rivera* courts relied heavily on the debtor's prior history to determine whether the future bonuses were "known or virtually certain at the time of confirmation" such that the debtor's failure to include that income in their chapter 13 plan required denial of confirmation. Here, however, no such history exists. As the debtor stated in his Schedule J, as of the petition date he had been working in his current job for nine years, but "with breaks." He stated that he returned to employment with Faltz Landscaping in 2022 after not working there in 2020 and 2021. There is no evidence that the debtor received any bonuses during the years he

10

worked for Faltz Landscaping prior to 2020, though he scheduled and exempted a $5,000 bonus for 2022.

If prior history was the only basis for determining whether future bonuses were known or virtually certain when the debtor filed his bankruptcy case, the court would be compelled to conclude that they were not included in his projected disposable income. But in this instance, it is not. The debtor has scheduled a bonus for 2022. He has also stated that as of 2023 he is employed in sales and as part of his contract he is entitled to a 10% bonus calculated on those sales. While the precise amount of such bonuses is unknown, a bonus is virtually certain because it is provided for contractually. In this regard, it is similar to the Alaska Permanent Fund Dividend (PFD) that qualified Alaskans receive annually. The amount of the PFD fluctuates considerably but it is a known reliable annual payment to qualified Alaskans and is part of a chapter 13 debtor's projected disposable income in Alaska. *See In re Johnson,* 614 B.R. 80 (Bankr. D. Alaska 2020).

Although the exact amount of the debtor's future bonuses is unknown, it can be projected. The debtor has stated that in the six months prior to filing, his gross monthly wages or salary was $6,510. ECF No. 16 at 1. In his Schedule I, the debtor also projected that his gross monthly wages or salary would remain at $6,510, though he anticipated a raise of 10% or more in the next year. ECF No. 14-7 at 2. Accepting the debtor's statement that he is entitled to a bonus of 10% of his sales, his projected annual bonus would presently be $7,812 ($6,510 monthly income x 12 = $78,120 annual income x 10% = $7,812). This calculation assumes that all of the debtor's income comes from sales and is subject to his bonus calculation. It also ignores the 10% anticipated raise in projecting the bonus. This may, or may not, be appropriate. A projected assumption of $7,812 would be consistent with the trustee's recollection that the debtor had estimated his future bonuses

11

would be in the $8,000 to $10,000 range each year.[3] This statement was not refuted in either the briefing or any oral argument. As such, the court concludes that the debtor's right to bonuses is known and virtually certain, and they must be included within the calculation of his projected disposable income. The court's conclusion is consistent with other decisions on this issue. *See, e.g., In re O'Neill Miranda*, 449 B.R. 182 (Bankr. D. Puerto Rico 2011); *In re Jacob*, 447 B.R. 535 (Bankr. N.D. Ohio 2010) (examined in the context of a motion to dismiss chapter 7 case for abuse under §§ 707(b)(1) and (b)(3)); *In re Barnes*, 378 B.R. 774 (Bankr. D.S.C. 2007) (non-filing spouse's annual bonus must be considered in calculating the debtor's projected disposable income); *In re Arsenault*, 370 B.R. 845, 850-51 (Bankr. M.D. Fla. 2007) (citing *In re Foster*, 2006 WL 2621080 (Bankr, N.D. Ind. Sept. 11, 2006)).

**C. The debtor may not defer turnover of the bonuses in the first three years.**

If the bonuses are included within the calculation of projected disposable income, the debtor asks that he be permitted to defer those payments. By voluntarily extending the term of his Plan, the debtor notes that he has already agreed to pay more than the projected annual bonuses over the course of his Plan. The trustee does not dispute this but argues that such deferral impermissibly evades the statutory requirement that the debtor commit all of his projected disposable income within the applicable commitment period. In short, the trustee contends that the debtor is inappropriately shifting the risk of nonpayment to his creditors by allowing the debtor to receive and retain the bonuses received over the first three years. The debtor responds that he has exempted his 2022 bonus and agreed to pay an additional $5,400 in the third year of his Plan. The suggestion, it appears, is that he is only deferring payment of one bonus.

---

[3] The parties should present either a stipulation as to material facts or admissible evidence in the future. But because neither party has disputed the facts presented in the briefing despite being given the opportunity to do so the court relies on those statements of fact.

12

The debtor's argument is understandable and has some initial appeal given that he is voluntarily committing to a five-year plan when only a three-year plan is required. But his argument brings to bear a closer examination of the interplay of projected disposable income and feasibility in this instance. Section 1325(a)(6) requires proof that the debtor "will be able to make all payments under the plan and to comply with the plan." 11 U.S.C. § 1325(a)(6). "The standards for feasibility require a level of specificity regarding the funds and debtor's source to fund the plan." *In re Grier*, 464 B.R. 839, 845 (Bankr. N.D. Iowa 2011). At the risk of oversimplifying the situation, if the debtor projects that he will be able to pay an additional $450 per month in the third year of his applicable commitment period, he should be *required* to do so as part of his projected disposable income independent of the amount of his bonus which must also be applied towards his Plan. Otherwise, it would appear that the debtor needs the bonus to make the regular plan payments. This would call into question the Plan's feasibility under § 1325(a)(6) or whether the Plan is dedicating all of the debtor's projected disposable income.

The court agrees with the trustee that a chapter 13 debtor must make his monthly plan payments as they arise based on the calculation of his projected disposable income as of confirmation. *See In re Villalon,* 2015 WL 3377854, at *3 (B.A.P. 9th Cir. May 22, 2015) ("A debtor must not impose prejudicial, unreasonable delay on the creditors and must make timely payments to the chapter 13 trustee under § 1326(a)(1)(A) according to the amounts proposed by the chapter 13 plan."). As a pragmatic matter, however, debtors are generally permitted to turn over non-monthly income, such as tax refunds and the Alaska PFD, as they are received during the applicable commitment period. So it is with bonuses. But they must be turned over when *received*; otherwise, the debtor has not paid all of his projected disposable income within the applicable commitment period. *See, e.g., In re Alonso*, 570 B.R. 622, 627 (Bankr. D. Idaho 2017)

13

(observing that a debtor could turn over tax refunds committed to plan payments upon receipt or prorate the expected refund over twelve months).

This restricts the debtor in this instance for the first three years. In years four and five of the Plan, however, there is no similar requirement, and the debtor is not required to commit all of his projected disposable income to the Plan, including the annual bonuses. *See, e.g., Pasley*, 507 B.R. at 319 (rejecting the chapter 13 trustee's argument that confirmation of a five-year plan by a below-median debtor extended the "applicable commitment period" as defined under § 1325(b)(4)(A)(i) from three years to five years). Instead, during years four and five he is only required to make the monthly payments established by a confirmed plan.

Section 1329 provides for the modification of plans, including the increase or decrease in plan payments. Modification exists to permit any party in interest, including the debtor, to modify a plan to adjust to unforeseen circumstances. Over the course of five years, there is often a need to adjust a plan. But to confirm his plan under § 1325(a), the debtor must commit all of his projected disposable income over the applicable commitment period because the trustee has objected. Presently, the debtor is projected to receive annual bonus payments pursuant to his current contract. He must commit, and pay, those bonuses over the course of his applicable commitment period. That he may need to adjust the plan payments in the future if the bonuses are less than projected, or that the trustee may seek an increase if the actual bonuses are more than projected, does not alter his current projected disposable income, or the requirement that he commit all of that income during the applicable commitment period. Nor is it unjust that the debtor should bear the burden of his Plan.

//

**Conclusion**

For these reasons, the court shall deny confirmation of the current Plan and require the debtor to file and, if necessary, notice an amended plan by **March 10, 2023.** The court shall enter a separate order consistent with this decision.

Dated:  February 23, 2023

    /s/ Gary Spraker
GARY SPRAKER
United States Bankruptcy Judge

Serve:  Debtor
R. Crowther, Esq.
N. Jipping, Trustee
U.S. Trustee
ECF Participants via NEF